## THE WM. KRAFT.

*(District Court, W. D. Pennsylvania.* June 17, 1885.)

PURCHASE OF VESSEL—NOTICE OF LIEN—ESTOPPEL.

While respondents were negotiating for the purchase of a steam-boat, a lien-creditor notified them of his claim, and warned them not to buy until it was settled; but subsequently informed them that it was settled, at the same time remarking that they ought to see that they got a good bond; thereupon the respondents completed the purchase, and paid the price, taking the customary bond of indemnity against liens generally. *Held,* that such creditor was estopped from asserting that said claim was a lien against the boat in the hands of the respondents, to the prejudice of the respondents and their surety in said bond.

In Admiralty.
*Albert York Smith,* for libelants.
*Knox & Reed,* for respondents.

ACHESON, J.  While the respondents were negotiating for the purchase of the steam tow-boat Wm. Kraft, Joseph Short, one of the libelants, notified them of the claim in question, and warned them not to buy until it was settled; but afterwards he returned to the respondents and informed them that the claim had been settled.  The respondents then consummated the purchase, and paid the full consideration in cash and negotiable paper.  So far there is no dispute as to the facts.  But both respondents further testify that at the second interview Short told them the boat did not owe the libelants anything, and to go ahead and buy her.  This Mr. Short denies; but I think the weight of the testimony here is with the respondents. Short's account of the matter is this: "I told him [Hodgson] the account was settled, and at the same time told him significantly that he should see that he got a good bond."  But, if it be true that Mr. Short's language was that "the account was settled," the respondents had a right to infer, under the circumstances, that they were now at liberty to purchase without reference to this claim.  Indeed, Short's conduct admitted of no other interpretation.

It is a customary thing for a purchaser of a steam-boat to take a bond of indemnity against liens, and the respondents would naturally regard Mr. Short's observation on that subject as a friendly suggestion having respect to other and secret liens.  Such bond of indemnity against liens generally the respondents did take, as any prudent purchaser of a steam-boat would ordinarily do.  It appears, however, that the solvency of the surety in this bond is now somewhat questionable.  But the surety himself is entitled to protection against a claim which the creditors have waived, or estopped themselves from asserting.

I have carefully looked into the evidence, and am very clear that the libelants have estopped themselves from asserting a lien against the boat in the hands of these respondents.  The fact is the claim *was* settled.  True, the libelants took notes for part of it, but this circumstance was not disclosed to the respondents, or the surety in the bond of indemnity.  Now, doubtless, the mere taking of a note does not operate to discharge a lien, and, as against the former owner of this boat, the lien might well be enforced, the notes being overdue and unpaid.  But when the court is asked to enforce the claim as a lien, to the prejudice of the present owners and their surety, a very different question is presented.  As against them good faith forbids the libelants to assert the claim.

Let a decree be drawn dismissing the libel, with costs.